**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **TIFFANY LAWRENCE** a.k.a. Tiffany **ZELLNER**<br><br>**Plaintiff,**<br><br>v.<br><br>**ENHANCED RECOVERY COMPANY, LLC, AT&T INC., AND AT&T MOBILITY LLC**<br><br>**Defendants.** | **CIVIL ACTION NO.**<br>_____<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR TRANSGRESSION OF FDCPA AND TCPA**

COMES NOW, TIFFANY LAWRENCE a.k.a. TIFFANY ZELLNER, Plaintiff in the above-styled matter, and through counsel files this, her COMPLAINT against Defendants, and shows this honorable Court as follows:

**PRELIMINARY STATEMENT**

1. This is an action for damages for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*; and the Telephone Consumer Protection Act, ("TCPA"), 47 U.S.C. § 227, *et seq*., and 28 U.S.C. §§1331, 1337.

1

## PARTIES, JURISDICTION, AND VENUE

2. Tiffany Lawrence ("Plaintiff"), Plaintiff in the above-styled matter, is a resident of Henry County, Georgia and may be served through counsel.

3. Defendant Enhanced Recovery Company, LLC ("ERC"), is a Florida corporation with principal offices located at 8014 Bayberry Road, Jacksonville, Florida 32256 and may be served through its agent CT Corporation System, located at 1200 South Pine Island Road, Plantation, Florida 33324.

4. Defendant AT&T Inc. ("AT&T") is a Delaware corporation with its corporate headquarters in Dallas, Texas. Defendant may be served with the Complaint and Summons by serving the same upon its registered agent CT Corporation System at 1999 Bryan St., Suite 900, Dallas, Texas 75201-3136.

5. Defendant AT&T Mobility LLC ("AT&T") is a subsidiary of AT&T Inc. and has a principal office address of 1025 Lenox Park Blvd. NE, Atlanta, Georgia, 30319. Defendant AT&T Mobility LLC may be served with the Complaint and Summons by serving the same upon its registered agent CT Corporation System at 1201 Peachtree Street, NE, Atlanta, Georgia 30361.

6. At all times relevant herein, Defendants acted by and through their agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

7. This Court has jurisdiction pursuant to the FDCPA, 15 U.S.C. § 1692, *et seq.*, and the TCPA, 47 U.S.C. § 227, *et seq.*, and 28 U.S.C. §§1331, 1337.

8. Venue lies in the Northern District of Georgia as Plaintiff's claim arose from acts of Defendant perpetrated therein, as permitted under 15 U.S.C. § 1391(b)(2).

9. Plaintiff is a "consumer" as defined in 15 U.S.C. § 1692a(3), as she is a natural person allegedly obligated to pay a debt.

10. At all relevant times, ERC acted as a "debt collector" within the meaning of 15 U.S.C. § 1692a(6), in that it held itself out to be a company collecting a consumer debt allegedly owed by Plaintiff.

11. The aforementioned alleged debt is a "debt" within the meaning of 15 U.S.C. § 1692a(5), in that it is an alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance and/or services which is the subject of the transaction were primarily for personal, family and/or household purposes.

12. Defendant ERC has made phone calls to Plaintiff's cell phone on behalf of AT&T in violation of the TCPA, 47 U.S.C. § 227 *et seq.*, and its related regulations set forth at 47 C.F.R. § 62.1200.

## FACTS RELEVANT TO ALL COUNTS

13. After stealing Plaintiff's identity, an unknown individual began opening unauthorized credit accounts, including accounts with AT&T, in Plaintiff's name without her knowledge and without her consent.

14. On or about October 24, 2016, Plaintiff received a collection letter from ERC attempting to settle a debt that Plaintiff did not owe to AT&T in the amount of $1,242.46.

15. This letter from ERC offered a settlement of the alleged debt in the amount of $559.11.

16. The letter from ERC was the first letter that Plaintiff received regarding the alleged debt.

17. Beginning on or about October 24, 2016, ERC contacted Plaintiff's cellular telephone number multiple times using an automatic telephone dialing system to coerce payment of the alleged debt.

18. All phone calls made by ERC were placed on behalf of AT&T, for which AT&T is vicariously liable.

19. Each and every time ERC called and Plaintiff spoke with ERC, Plaintiff told ERC that Plaintiff does not owe any money related to an AT&T account.

20. On some occasions, ERC blocked the caller ID, so Plaintiff's phone did not show who was calling her.

21. ERC has called Plaintiff's cell phone at least 175 times utilizing an automatic telephone dialing system, and without Plaintiff's consent.

22. When Plaintiff answers a phone call from ERC, there is always a pause/click, a telltale sign that ERC is utilizing an automatic telephone dialing system.

23. When Plaintiff answers a phone call from ERC, she says hello multiple times when she answers, with no response from ERC, which is a telltale sign that ERC is utilizing an automatic telephone dialing system.

24. When ERC's number is not blocked, it shows as 800-875-5164.

25. When Plaintiff answers a phone call from ERC and is connected to someone on the line, it takes a while to connect through to ERC, a telltale sign that ERC is utilizing an automatic telephone dialing system.

26. At all times pertinent hereto, ERC made use of an automatic telephone dialing system to contact Plaintiff on her cellular telephone.

27. Plaintiff never gave express consent to ERC, AT&T, or any related party to call her cellular telephone.

28. On or about February 9, 2017, Plaintiff received a collection letter from ERC attempting to settle a debt that Plaintiff did not owe to AT&T in the amount of $1,242.46.

29. Plaintiff did not open the AT&T account in question, did not incur the debt asserted by ERC, and therefore did not owe AT&T $1,242.46 and was not required to settle any amount with ERC.

30. ERC continues to report the alleged AT&T debt to third parties.

## Damages

31. Plaintiff has suffered an injury in fact that is traceable to Defendant's conduct and that is likely to be redressed by a favorable decision in this matter.

32. Plaintiff suffered a concrete informational injury as a result of ERC's failure to provide truthful information in connection with its attempt to collect an alleged debt from Plaintiff.

33. Plaintiff suffered a concrete injury to her reputation as a result of ERC's communication of false information to third parties in connection with its attempt to collect an alleged debt from Plaintiff.

34. Plaintiff suffered a concrete injury in the emotional suffering, feelings of unfairness, sleepless nights, and worry over the treatment she received at the hands of ERC.

## COUNT I: VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT, 15U.S.C. § 1692, *et seq.* ("FDCPA") BY ERC

35. Plaintiff re-alleges and incorporates paragraphs 1 through 34 of this Complaint as if fully set forth herein.

36. Defendant ERC uses interstate commerce, international wires, and/or mail in its business. The principal purpose of Defendant's business is the collection of consumer debts. ERC's debt collections include 2,200,000 "right party" contacts in the course of which, it sends 12,000,000 letters annually and has managed more than 24,000,000 "recovery accounts." http://www.ercbpo.com/recovery/about/ (Last Accessed April 27, 2017). These numbers are in the context of pre and post-charge-off, and specialty collections. http://www.ercbpo.com/recovery/ (Last Accessed April 27, 2017). Further, ERC's total service calls amount to 15,697,884. http://www.ercbpo.com/outsourcing/ (Last Accessed April 27, 2017). ERC has nearly 2,000 employees. http://www.ercbpo.com/careers/ (Last Accessed April 27, 2017). All of the approximately 2,000 employees of ERC are employed in debt collection. http://www.ercbpo.com/recovery/ (Last

Accessed April 27, 2017). Defendant also regularly collects, or attempts to collect, directly or indirectly, debts owed or due, or asserted to be owed or due, to third parties. "ERC is contracted by creditors and in some instances debt purchasers. ERC does not own any of the debts [which it] service[s]… http://www.ercbpo.com/help/who-is-erc/ (Last Accessed April 27, 2017). Defendant is therefore a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6)

37. Plaintiff has been the object of collection activity arising from consumer debt, because the alleged debt ERC is attempting to collect stems from an AT&T consumer account.

38. ERC has violated the FDCPA by means of harassment and abuse within the meaning of 15 U.S.C. § 1692d.

39. ERC has violated the FDCPA by continually calling Plaintiff, after being asked to stop calling within the meaning of 15 U.S.C. § 1692d.

40. ERC has violated the FDCPA by making false or misleading representations to Plaintiff within the meaning of 15 U.S.C. § 1692e.

41. ERC has misrepresented the character, amount, or legal status of the alleged debt in violation of 15 U.S.C. § 1692e(2).

42. ERC has communicated credit information regarding the alleged debt which ERC knew or should have known is false in violation of 15 U.S.C. § 1692e(8).

43. ERC knew or should have known that the alleged debt is disputed, but has communicated credit information regarding the alleged debt without communicating that the disputed debt is disputed in violation of 15 U.S.C. § 1692e(8).

44. ERC has violated the FDCPA by the use of unfair practices within the meaning of 15 U.S.C. § 1692f.

45. ERC attempted to collect a debt and an amount of debt not authorized by any agreement creating debt or permitted by law in violation of 15 U.S.C. § 1692f(1).

46. ERC has acted intentionally in representing that Plaintiff owes money, which Plaintiff Tiffany Lawrence does not owe.

47. ERC has acted intentionally by not providing Plaintiff with the notice required by 15 U.S.C. § 1692g.

48. Plaintiff has suffered damages because of ERC's continuous violations of the FDCPA and Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k in an amount to be proven at trial.

49. Plaintiff is entitled to statutory penalties in the amount of $1,000.00 pursuant to 15 U.S.C. § 1692k.

50. Plaintiff is entitled to the recovery of reasonable costs and attorney's fees pursuant to 15 U.S.C. § 1692k.

### COUNT II. VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 et seq.

51. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

52. At all times mentioned herein, ERC called Plaintiff on her cellular phone using an automatic telephone dialing system ("ATDS" or "Predictive Dialer") and/or by using a prerecorded or artificial voice.

53. In expanding on the prohibitions of the TCPA, the Federal Communications Commission (FCC) defines a Predictive Dialer as "a dialing system that automatically dials consumers' telephone numbers in a manner that "predicts" the time when a consumer will answer the phone and a [representative] will be available to take the call…" *2003 TCPA Order*, 18 FCC 36 Rcd 14022. The FCC explains that if a representative in not "free to take a call that has been placed by a predictive dialer, the consumer answers that phone only to hear 'dead air' or a dial tone, causing frustration." *Id*. In addition, the TCPA places prohibitions on companies that "abandon" calls

10

by setting "the predictive dialers to ring for a very short period of time before disconnecting the call; in such cases, the predictive dialer does not record the call as having been abandoned." *Id*. Further, the *2015 TCPA Order* (FCC 15-72), the FCC affirmed "that dialing equipment generally has the capacity to store or produce, and dial random or sequential numbers (and thus meets the TCPA's definition of 'autodialer') even if it is not presently used for that purpose, including when the caller is calling a set list of consumers.

54. Beginning on or about October 24, 2016, ERC contacted Plaintiff's cellular telephone number multiple times using an automatic telephone dialing system to coerce payment of the alleged debt.

55. All phone calls made by ERC were placed on behalf of AT&T, for which AT&T is vicariously liable.

56. ERC's telephone systems have many earmarks of a Predictive Dialer.

57. When Plaintiff answers a phone call from ERC, there is always a pause/click, a telltale sign that ERC is utilizing an automatic telephone dialing system.

58. When Plaintiff answers a phone call from ERC, she says hello multiple times when she answers, with no response from ERC, which is a telltale sign that ERC is utilizing an automatic telephone dialing system.

59. When ERC's number is not blocked, it shows as 800-875-5164.

60. When Plaintiff answers a phone call from ERC and is connected to someone on the line, it takes it a while to connect through.

61. On some occasions, ERC blocked the caller ID, so Plaintiff's phone did not show who was calling her.

62. Each and every time ERC called and Plaintiff spoke with ERC, Plaintiff told ERC that Plaintiff does not owe any money related to an AT&T account.

63. ERC has called Plaintiff's cell phone at least 175 times utilizing an automatic telephone dialing system, and without Plaintiff's consent.

64. At all times pertinent hereto, ERC made use of an automatic telephone dialing system to contact Plaintiff on her cellular telephone.

65. Plaintiff never gave express consent to ERC, AT&T, or any related party to call her cellular telephone.

66. Upon information and belief, ERC's Predictive Dialers have the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

67. Despite Plaintiff directing ERC to cease all calls to her cellular telephone, ERC continued to place automatic telephone calls to Plaintiff's cellular telephone knowing that it lacked consent to call her. As such, each call placed to Plaintiff was made in knowing and/or willful violation of the TCPA, and subject to treble damages pursuant to 47 U.S.C. § 227(b)(3)(C).

68. The telephone number called by ERC was assigned to a cellular telephone service for which Plaintiff incurs charges for incoming calls pursuant to 47 U.S.C. § 277(b)(1).

69. The calls from ERC to Plaintiff were not placed for "emergency purposes" as defined by 47 U.S.C. § 227(b)(1)(A)(i).

70. The Plaintiff is entitled to statutory damages under the TCPA of $500.00 per telephone call made to Plaintiff pursuant to 47 U.S.C. § 227(b)(3)(B).

71. ERC willfully and knowingly violated the TCPA, and as such the Plaintiff is entitled to $1,500.00 per telephone call made to the Plaintiff pursuant to 47 U.S.C. § 227(b)(3).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that judgment be entered against ERC as follows:

1. That this Court enter judgment in favor of Plaintiff;

2. That Plaintiff be granted a reasonable and fair judgment against Defendant **ENHANCED RECOVERY COMPANY, LLC** for noncompliance with the Fair Debt Collection Practices Act with statutory remedies defined by 15 U.S.C. § 1692 *et seq.* in the amount of $1,000.00;

3. for an award of statutory damages of $500.00 per call pursuant to 47 U.S.C. § 227(b)(3)(B);

4. for an award of treble damages of $1,500.00 per call pursuant to 47 U.S.C. § 227(b)(3);

5. That Plaintiff have an award for compensatory damages in an amount to be determined at trial;

6. That Plaintiff have an award for her reasonable and necessary court costs, including attorney's fees; and

7. For such other and further relief as this Court may deem equitable and just.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Respectfully submitted,

Dated: May 5th, 2017.

**SMITH, WELCH, WEBB & WHITE, LLC**
By: **s/Orion G. Webb**
ORION G. WEBB
Georgia State Bar No. 479611

280 Country Club Drive
Suite 300
Stockbridge, Georgia 30281
Telephone: (770) 389-4864
Fax: (770) 389-5193
owebb@smithwelchlaw.com

## **CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 5.1**

Plaintiff's counsel hereby certifies that this pleading has been prepared with one of the font and point selections approved by the Court in L.R. 5.1.

**SMITH, WELCH, WEBB & WHITE, LLC**

**/s/ Orion G. Webb**
ORION G. WEBB
Georgia State Bar No. 479611